IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ROBERT WELLMAN, JOAN WELLMAN, DANIEL B. BARCUS, and ALCINDA BARCUS<br><br>Plaintiffs,<br><br>vs.<br><br>LACEY ORCUTT, Acting Director of Glacier County Farm Service Agency, and THOMAS VILSACK, Acting Secretary of United States Department of Agriculture,<br><br>Defendants. | CV-21-30-GF-BMM<br><br>ORDER |

## INTRODUCTION

Defendants Lacey Orcutt, Acting Director of Glacier County Farm Service Agency, and Thomas Vilsack, Acting Secretary of the United States Department of Agriculture, (collectively, "Defendants"), have filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, or, in the Alternative, Motion for More Definite Statement (Doc. 4). The Court held a hearing on the matter on September 20, 2021. For the following reasons, the Motion is granted in part, and denied in part.

## BACKGROUND

Plaintiffs Robert and Joan Wellman ("Wellmans"), and Daniel and Alcinda Barcus ("Barcuses"), (collectively, "Plaintiffs"), are farmers and ranchers within the exterior boundaries of the Blackfeet Reservation and are members of the Blackfeet Tribe. (Doc. 1 at ¶¶ 1-2, 9, 18). They own their properties ("farms") in both fee simple and trust. *Id.*

Defendants appear on behalf of the Glacier County Farm Service Agency ("FSA") and the United States Department of Agriculture ("USDA"). The FSA distributes financial assistance for the USDA. *Id.* at ¶ 3. Plaintiffs historically have received financial assistance from the FSA and USDA. *Id.* at ¶¶ 10, 19.

The FSA discovered in 2018 that lease information on "numerous records in its Glacier County office contained errors." (Doc. 5-1 at ¶ 4). The FSA took steps to identify current farm operators and their leases. *Id.* The FSA required operators in Glacier County to update their lease information and to confirm the amount of acreage under operation to remain eligible for FSA benefits. *Id.* at ¶¶ 3-4.

Plaintiffs attempted to update their lease information. Plaintiffs discovered that the "farms" they originally owned had been recast by Defendants in the spring of 2019. (Doc. 1 at ¶¶ 11, 20). The Wellmans allege the 36 farms they originally owned were recast into over 300 farms. *Id.* at ¶ 11. The Barcuses allege similar recasting. *Id.* at ¶ 20.

The recasting caused significant disruption to the farm assistance that Plaintiffs routinely had received from Defendants. *Id.* at ¶¶ 12, 21. Much confusion arose about the location, acreage, and modification process regarding the recast farms. *Id.* at ¶¶ 13, 22. Plaintiffs allege that the confusion resulted in obstacles that made them miss their deadline to receive financial assistance from Defendants. *Id.*

Wellmans and Barcuses claim that the Defendants currently have withheld $600,000 and $250,000, respectively, in loans and other farm payments because of Plaintiffs' race as Native Americans. *Id.* at ¶¶ 12, 21. Defendants are also demanding back pay from Plaintiffs for their previous years of financial support. *Id.* at ¶¶ 14, 23.

Wellmans and Barcuses filed their Complaint against Defendants on March 11, 2021. (Doc. 1). Plaintiffs raise three causes of action: Violation of Equal Credit Opportunity Act ("ECOA") (Count I); Declaratory Judgment Requiring Defendant to Disburse Financial Assistance (Count II); and Injunctive Relief (Count III). Defendants now have filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, or in the alternative, Motion for More Definite Statement. (Doc. 4).

## LEGAL STANDARD

**Motion to Dismiss for Lack of Jurisdiction:**

Rule 12(b)(1) allows a court to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The court may look to extrinsic evidence outside the pleadings when evaluating whether to dismiss a complaint for lack of subject matter jurisdiction. *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

**Motion to Dismiss for Failure to State a Claim:**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The complaint must contain sufficient factual matter, accepted as true, to state a claim

for relief that is plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim remains plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard does not require probability, but "asks for more than sheer possibility that defendant has acted unlawfully." *Id.*

A court may require a party to make a more definite statement if the complaint appears so "vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

## ANALYSIS

### I. Plaintiffs' claim for punitive damages is dismissed under 12(b)(1)

Plaintiffs' Complaint indicates that they seek punitive damages against Defendants. (Doc. 1 at ¶ 27). Plaintiffs acknowledge in their response brief that they do not seek punitive damages. (Doc. 6 at 4). Regardless of Plaintiffs' position, Section 1691e(b) of Title 15 of the United States Code expressly exempts the United States government, its subsidiaries, and its agencies from any award of punitive damages. This statute bars Plaintiffs from seeking punitive damages against Defendants. The Court dismisses Plaintiffs' claim for punitive damages in Count I for Violation of Equal Credit Opportunity Act. (Doc. 1 at ¶ 27).

## II. Plaintiffs have sufficiently pled their ECOA claims and survive Defendants' 12(b)(6) Motion to Dismiss

Defendants ask this Court to dismiss the claims against them for Plaintiffs' failure to adequately state a claim, or, in the alternative, to order the Plaintiffs to make a more definite statement in the Complaint. (Doc. 5). Defendants allege that Plaintiffs' Complaint should be dismissed because they do not plead sufficient facts to establish a prima facie discrimination case under the ECOA. (Doc. 5 at 9-15).

Under Section § 1691(a) of Title 15 of the United States Code, a creditor cannot discriminate against any applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." To prove a prima facie case under the ECOA, a plaintiff must show that: "1) she is a member of a class or classes of persons protected under the statute; 2) she applied for and was qualified to receive credit; 3) her application for credit was rejected; and 4) other similarly situated persons, not members of her protected class or classes were extended credit or given more favorable treatment." *Shiplet v. Veneman*, 620 F.Supp. 2d 1203, 1232 (D. Mont. 2009), aff'd, 383 F. App'x 667 (9th Cir. 2010).

Defendants argue that Plaintiffs fail to plead facts to show that they were (1) "applicants" for credit, (2) that they engaged in a "credit transaction" with the

6

FSA, or (3) that similarly situated individuals outside of their protected class were given more favorable treatment. (Doc. 5 at 9).

### a. Plaintiffs do not need to make out a prima facie case at this stage

Defendants allege that Plaintiffs' claims must be dismissed because Plaintiffs fail to make out a prima facie case under the ECOA. A prima facie standard represents "an evidentiary standard and not a pleading requirement." *Taylor v. Accredited Home Lenders, Inc.*, 580 F.Supp. 2d 1062 (S.D. Cal. 2008). The Court does not hold Plaintiffs to a prima facie standard at this stage as Defendants suggest. The Court instead applies the plausibility standard pursuant to Fed. R. P. 12(b)(6) motions for dismissal. See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). As analyzed below, Plaintiffs plead sufficient facts to draw reasonable inferences that Defendants stand liable for their conduct under the ECOA. See *Id.* at 678.

### b. Plaintiffs plead sufficient facts to support a plausible claim under ECOA

Defendants assert that Plaintiffs have not pled sufficient facts to establish claims under the ECOA. The application of the terms in the ECOA is not as narrow as Defendants suggest. For purposes of credit discrimination, interpretations of terms under the ECOA should be construed "broad[ly]," *Moore v. USDA*, 55 F.3d 991, 993 n.2 (5th Cir. 1995), and "expansive[ly]," *Wilson v. Toussie*, 260 F.Supp.2d 530, 541 (E.D.N.Y. 2003).

7

Defendants allege first that Plaintiffs have failed to plead facts to show that they were "applicants" for credit under the ECOA. The ECOA defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). In *Haynie v. Veneman*, the defendant sought to dismiss plaintiff's claims as not actionable under the ECOA because they were based merely on administrative processing issues. 272 F.Supp.2d 10, 18 (D.D.C. 2003). The court emphasized that, "[r]ather than prohibiting only the actual denial of a loan application, the statute bars racial discrimination 'with respect to *any aspect* of a credit transaction.' 15 U.S.C. § 1691(a)(1) (emphasis added)." *Id.* The *Haynie* court clarified that "any aspect of a credit transaction" means "to prohibit discrimination with respect to those acts surrounding an application for credit that materially affect the applicant's ability to obtain the desired credit." *Id.*

Plaintiffs allege in their Complaint that Defendants discriminated against Plaintiffs based on their race as Native Americans and hindered Plaintiffs' ability to obtain financial assistance by reconfiguring Plaintiffs' property. (Doc. 1). These facts may fail to state explicitly that Plaintiffs "applied" for credit. These facts establish, however, that Plaintiffs were indeed "applicants" as broadly construed under the ECOA. The discrimination that Plaintiffs allege that caused Plaintiffs to

miss their deadline relates to the "acts surrounding [the] application" that materially affected the Plaintiffs' ability to obtain credit from the FSA. *Haynie*, 272 F.Supp.2d at 18. Plaintiffs' allegations fall within "any aspect of the credit transaction" and Plaintiffs must be considered "applicants" under the ECOA. *Id.*

Defendants next argue that Plaintiffs fail to plead facts to show that they engaged in a "credit transaction." The ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). Courts have emphasized that "credit transactions" must be interpreted to accomplish "the Act's antidiscriminatory goal." *Brothers v. First Leasing*, 724 F.2d 789, 794 (9th Cir. 1984).

Defendants argue that Plaintiffs fail to claim that they were denied "credit" by the FSA, but instead allege that the FSA withheld "loans and financial assistance." (Doc. 1 at ¶ 12, 21; Doc. 5 at 12). Defendants assert that no reasonable inference can be drawn of an ECOA violation giving rise to an "adverse action" due to Plaintiffs' failure to identify a single credit transaction where the FSA discriminated against them or denied credit to them. (Doc. 5 at 12, 14).

The ECOA defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. §

1691(d)(6). The statute also specifies that the term "adverse action" does not include a "refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." *Id.*

In *Wilson v. Toussie*, the court ruled that an applicant who had not applied for and thus had not been denied credit, nonetheless enjoyed protection by the ECOA. 260 F.Supp.2d 530, 541 (E.D.N.Y. 2003). The United States Department of Housing and Urban Development had granted a loan to minority applicants when a real estate businesses had submitted applications containing false information in order to lure these minority buyers into purchasing homes that they could not afford. *Id.* at 533. The court analyzed the definition of "adverse action" in Section 1691(d)(6). *Id.* at 541. The court noted that the definition of "adverse action" in Section 1691(d)(6) does not "alter the expansive language contained in Section 1691(a)." *Id.* The court also reasoned that "[ECOA] protection is not limited to those applicants who were rejected." *Id.* (quoting *Hargraves v. Capital City Mortg. Corp.*, 140 F.Supp.2d 7, 22 (D.D.C. 2000)). The court declined to dismiss plaintiff's claims under the ECOA even though the plaintiff had not applied for credit. *Id.*

Similar to *Wilson*, Plaintiffs do not need to have applied for credit and been rejected to fall into the ECOA's broad scope of protection. Plaintiffs allege that Defendants have demanded payments while their farms were out of compliance.

10

(Doc. 1 at ¶¶ 14, 23). Plaintiffs claim that Defendants have placed "unnecessary and unreasonable obstacles" for Plaintiffs to obtain financial assistance through the USDA by reconfiguring Plaintiffs' property. *Id.* at ¶ 29. Plaintiffs assert that Defendants failed to provide documentation for Plaintiffs to complete applications in a timely manner. *Id.* at ¶ 32. And Plaintiffs contend that Defendants' obstacles resulted in Plaintiffs missing the application deadline and Defendants withholding $600,000 and $250,000 in loans and other farm payments because of Plaintiffs' race as Native Americans. *Id.* at ¶¶ 12, 21.

Interpreting these facts though the lens of the "Act's antidiscriminatory goal," Plaintiffs adequately identify that they engaged in, and were discriminated against in, a "credit transaction." *Brothers*, 724 F.2d at 794. The alleged discriminatory conduct by the FSA that resulted in obstacles to Plaintiffs' ability to obtain financial assistance and further allegations that the FSA withheld "loans and financial assistance" falls within *Wilson*'s broad interpretation of "adverse action." As illustrated in *Haynie*, "any aspect of a credit transaction" includes Plaintiffs' allegations that Defendants' actions materially affected the Plaintiffs' ability to obtain financial assistance. 272 F.Supp.2d 10, 18. The alleged facts also demonstrate that Plaintiffs engaged in a "credit transaction." *Id.*

Defendants further argue allege that Plaintiffs fail to plead facts to show similarly situated persons were given more favorable treatment. Defendants assert

11

that "[n]on-Indian farmers located off of the Blackfeet Reservation would not own their land in trust and would . . . not be subject to similar restrictions and requirements related to their lands" and are thus not similarly situated to Plaintiffs. (Doc. 5 at 15). As Plaintiffs point out, however, only Native Americans, or federally recognized citizens, can own trust land. (Doc. 6 at 11). To establish a claim under the ECOA, a plaintiff must show "an outwardly neutral policy or practice that has a significant adverse or disproportionate impact on members of a protected group" *Taylor*, 580 F.Supp.2d at 1068.

Plaintiffs allege that the Blackfeet Tribe holds their land in trust. (Doc. 1 at ¶¶ 9, 11, 18, 20). Plaintiffs also allege that FSA discriminated against them because of their race as Native Americans through the recasting their farms and the incompetent and suspect handling of their case. *Id.* at ¶¶ 11, 15, 16, 20, 23, 25. These alleged facts establish that Plaintiffs, as Native Americans and a protected class under the ECOA, may have suffered a significant adverse or disproportionate impact from the FSA's actions. Accordingly, Plaintiffs have pled sufficient facts to establish a claim under the ECOA.

## CONCLUSION

Based on the allegations in Plaintiffs' Complaint, Plaintiffs plead sufficient facts to support plausible claims against Defendants under the ECOA. Accordingly, Defendants' Alternative Motion for a More Definite Statement fails.

**ORDER**

Accordingly, **IT IS ORDERED** that the Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, or, in the Alternative, Motion for More Definite Statement (Doc. 4) is **GRANTED IN PART** and **DENIED IN PART**.

Dated the 19th day of January, 2022.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court